DESMOND, Sheriff, et al. v. EGGERS.

Circuit Court of Appeals, Ninth Circuit.
March 28, 1927.

Rehearing Denied May 2, 1927.

No. 5093.

1. Extradition ☞14(1)—Sufficiency of complaint or warrant issued thereon in foreign country held not in issue in extradition proceedings. (Rev. St. § 5270 [Comp. St. § 10110]).

In proceeding under Rev. St. § 5270 (Comp. St. § 10110), for extradition of a fugitive from justice of a foreign county, in conformity to a treaty or convention, the sufficiency of the complaint or warrant issued thereon in the foreign country is not in issue.

2. Extradition ☞11—Complaint in extradition proceeding, made on information and belief, held sufficient.

Complaint in proceeding for extradition of a person to a foreign country is sufficient, though made on information and belief, where the source of information is given as affidavits referred to, which, properly authenticated, are produced in evidence, and are themselves sufficient to sustain the charge made.

3. Extradition ☞14(2)—Affidavits introduced on hearing in extradition proceeding held properly authenticated (Comp. St. § 10116).

Affidavits introduced on hearing of proceeding for extradition of person to Canada held properly authenticated, under Act Aug. 3, 1882, § 5 (Comp. St. § 10116).

4. Extradition ☞14(2)—Statutory mode of authenticating papers in extradition proceeding is not exclusive (Comp. St. § 10116).

Mode of authenticating papers as evidence on extradition hearing by consular certificate, prescribed by Act Aug. 3, 1882, § 5 (Comp. St. § 10116), is not exclusive.

5. Extradition ☞14(2)—Power of consular officer to certify evidence for use on hearing is not limited to deposition on which original warrant of arrest was based.

Power of consular officers by certificate to authenticate papers for use as evidence on extradition hearing is not limited to the deposition on which the original warrant of arrest in the foreign country was based.

6. Extradition ☞14(2)—Exclusion by committing magistrate of evidence offered by accused held not error.

Exclusion by the committing magistrate on a hearing for extradition to a foreign country of evidence offered by accused that he was not in that country at the time the offense charged was committed, which tended to contradict direct testimony of witnesses for the prosecution, held not error.

7. Habeas corpus ☞117(2)—Order discharging on habeas corpus person committed for extradition held not bar to second proceeding for same offense.

An order discharging on writ of habeas corpus a person committed for extradition to a

foreign country, on the ground of insufficiency of evidence, was not an adjudication which rendered the question of the right of extradition for the offense res judicata, or barred a second proceeding based on a new warrant, and in which new and different evidence was produced.

Appeal from the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Petition by Milo Eggers against Thomas Desmond, Sheriff of Pierce County, Wash., and W. O. Chapman, extradition magistrate, for writ of habeas corpus. From an order discharging petitioner, respondents appeal. Reversed.

Patterson & Ross, of Seattle, Wash., for appellants.

George F. Vanderveer, of Seattle, Wash., for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

RUDKIN, Circuit Judge. July 9, 1926, a duly authorized representative of the Canadian government made complaint under oath to one of the judges of the superior court of the state of Washington for Pierce county, the same being a court of record of general jurisdiction in that state, charging one Milo Eggers with the crime of robbery, committed in the county of Victoria, province of British Columbia, Dominion of Canada, and that Eggers had fled from that province and was then in Pierce county, state of Washington. A warrant of arrest issued pursuant to this complaint, and a hearing was had, to the end that evidence of criminality might be heard and considered. Upon the hearing the judge or magistrate deemed the evidence sufficient to sustain the charge, under the provisions of the treaty or convention with Great Britain, and issued his warrant for the commitment of the person so charged to the proper jail, there to remain until surrendered in accordance with law. Eggers thereupon applied to the court below for a writ of habeas corpus, and the present appeal is prosecuted from an order of discharge.

[1] Numerous objections to the regularity of the proceedings before the committing magistrate were urged by Eggers in support of his petition in the court below, and the same objections are now urged upon this court in support of the order of discharge. It is first contended that the complaint upon which a warrant of arrest was issued by a magistrate in the province of British Columbia and the complaint before the judge or committing

magistrate in this country were on information and belief only, and that such complaints are insufficient. As to the former we need only say that the courts of this country are not concerned with either its existence or its legal sufficiency. As said by the Supreme Court in Grin v. Shine, 187 U. S. 181, 191, 23 S. Ct. 98, 102 (47 L. Ed. 130):

"But, notwithstanding such treaty, Congress has a perfect right to provide for the extradition of criminals in its own way, with or without a treaty to that effect, and to declare that foreign criminals shall be surrendered upon such proofs of criminality as it may judge sufficient. * * * This appears to have been the object of section 5270, which is applicable to all foreign governments with which we have treaties of extradition. The requirements of that section, as already observed, are simply a complaint under oath, a warrant of arrest, evidence of criminality sufficient to sustain the charge under the provisions of the proper treaty or convention, a certificate by the magistrate of such evidence and his conclusions thereon, to the Secretary of State. As no mention is here made of a warrant of arrest, or other equivalent document, issued by a foreign magistrate, we do not see the necessity of its production. This is one of the requirements of the treaty which Congress has intentionally waived."

[2] The complaint filed before the judge or committing magistrate in this country was upon information and belief, but it set forth the source of information, by referring to certain affidavits and documents which were later received in evidence upon the hearing. Assuming for the present that such affidavits were properly authenticated, the sufficiency of the complaint is amply supported by authority. Yordi v. Nolte, 215 U. S. 227, 30 S. Ct. 90, 54 L. Ed. 170.

The sufficiency of the evidence of criminality is not open to question, if certain affidavits received in evidence at the hearing were properly authenticated. George A. Bucklin, "consul of the United States of America, American Consulate, Victoria, B. C., Canada," certified that the affidavits and documents in question were properly and legally authenticated, so as to entitle them to be received in evidence for similar purposes by the tribunals of Canada, as required by the Act of Congress of August 3, 1882. The act in question provides (section 5 [Comp. St. § 10116]) that depositions, warrants, and other papers, or the copies thereof, shall be received and admitted as evidence on such hearing, for all the purposes of such hear-

ing, if they shall be properly and legally authenticated, so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that any deposition, warrant, or other paper, or copies thereof, so offered, are authenticated in the manner required by the act.

[3] Several objections are urged against the sufficiency of this certificate. It is first contended that the American consul at Victoria is not the principal diplomatic or consular officer of the United States resident in the Dominion of Canada. Section 1674 of the Revised Statutes (Comp. St. § 3116) provides that consul general, consul, and commercial agent shall be deemed to denote full, principal, and permanent consular officers, as distinguished from subordinates and substitutes. On the argument before this court counsel conceded that in one sense there is no principal diplomatic or consular officer of the United States resident in Canada, inasmuch as all such officers are equal in authority, though not in rank. From this it is argued by the appellee that there is no consular officer of the United States resident in Canada who is authorized to make the certificate in question. The appellant, on the other hand, contends that any American consul resident in that country is a principal within the meaning of the statute.

[4] We are inclined to agree with this latter view. We understand that it has been the practice for years for such consular officers to make these certificates, and the practice has been recognized by the Department of State by furnishing blanks for that purpose. But, in any event, in addition to the consular certificate, the appellant offered competent testimony tending to show that the papers and documents in question were in fact so authenticated as to entitle them to be received as evidence of criminality by the tribunals of Canada, and, notwithstanding some conflict of authority, we are of opinion that such testimony was admissible, and that the mode of proof prescribed by the statute is not exclusive. In re Fowler (C. C.) 4 F. 303; In re Wadge (D. C.) 16 F. 332; In re McPhun (C. C. ) 30 F. 57; In re Benson (C. C.) 34 F. 649.

[5] It is next contended that the authority of the consular office to so certify is expressly limited by section 5271 of the Revised Statutes to the deposition upon which the original warrant of arrest issued in the for-

eign country, and that the affidavits chiefly relied on in this case were not made or taken until some time after the issuance of the original warrant. Some controversy has arisen over this question by reason of subsequent amendments and repeals, but in practice the authority of the consular officer has not been so limited. In re Behrendt (C. C.) 22 F. 699; Collins v. Loisel, 259 U. S. 309, 42 S. Ct. 469, 66 L. Ed. 956.

It is lastly contended on this branch of the case that ex parte affidavits are not depositions, within the purview of the statute. But, regardless of mere technical definitions, we deem it sufficient to say that the Supreme Court has decided otherwise. Bingham v. Bradley, 241 U. S. 511, 517, 36 S. Ct. 634, 60 L. Ed. 1136.

[6] The committing magistrate declined to receive testimony on the part of the accused tending to show that he was not in the Dominion of Canada at the time of the commission of the offense charged against him, and it is now contended that by so doing the magistrate renounced his jurisdiction and that his subsequent commitment was a nullity. All of the authorities agree that it is not within the province of a committing magistrate to try the accused as to his guilt or innocence, and that matters which are only a defense to a trial on the merits are not admissible. 25 C. J. 289. Counsel for the appellee concedes this general rule, but contends that testimony tending to show that the appellee was not a fugitive from justice stands upon a different footing, and certain interstate extradition cases are cited to that effect. The question in one form or another has been before the Supreme Court at different times, but no definite rule has been laid down or stated. It must be conceded at the outstart that no right is given to one accused of crime under the laws of the state of Washington to offer testimony in his own behalf before a committing magistrate. The most that can be claimed is that he is entitled to offer himself as a witness in his own behalf, if he so desires. Rem. Comp. Stat. of Washington 1922, § 2148. In Charlton v. Kelly, 229 U. S. 447, 461, 33 S. Ct. 945, 949 (57 L. Ed. 1274, 46 L. R. A. [N. S.] 397) the court said:

"There is not and cannot well be any uniform rule determining how far an examining magistrate should hear the witnesses produced by an accused person. The proceeding is not a trial. The issue is confined to the single question of whether the evidence for the state makes a prima facie case of guilt sufficient to make it proper to hold the party

for trial. Such committing trials, if they may be called trials in any legal sense, are usually regulated by local statutes. Neither can the courts be expected to bring about uniformity of practice as to the right of such an accused person to have his witnesses examined, since if they are heard, that is the end of the matter, as the ruling cannot be reversed. In this case the magistrate refused to hear evidence of insanity. It is claimed that, because he excluded such evidence, the judgment committing appellant for extradition is to be set aside as a nullity, and the accused set at liberty. At most the exclusion was error not reviewable by habeas corpus. To have witnesses produced to contradict the testimony for the prosecution is obviously a very different thing from hearing witnesses for the purpose of explaining matters referred to by the witnesses for the government."

The court then approved the statement of Mr. Justice Washington in United States v. White, Fed. Cas. No. 16,685, 2 Wash. C. C. 29, as follows:

"Generally speaking, the defendant's witnesses are not examined upon an application to bind him over to answer upon a criminal charge. The defendant's witnesses are never sent to the grand jury, except where the attorney for the prosecution consents thereto. But in this incipient stage of the prosecution, the judge may examine witnesses who were present at the time when the offense is said to have been committed, to explain what is said by the witnesses for the prosecution; and the cross-examination of the witnesses for the prosecution, is certainly improper."

Again, in McNamara v. Henkel, 226 U. S. 520, 33 S. Ct. 146, 57 L. Ed. 330, the court said:

"Under this provision, the rule is well established that, if the committing magistrate has jurisdiction of the subject-matter and of the accused, and the offense charged is within the treaty, and the magistrate has before him legal evidence on which to exercise his judgment as to the sufficiency of the facts to establish the criminality of the accused for the purposes of extradition, his decision cannot be reviewed on habeas corpus"—citing many cases.

Under the treaty and the act of Congress it was incumbent on the Canadian government to produce evidence of criminality only, and this it did by presenting the affidavits of two witnesses, who testified positively and unequivocally that the appellee committed the crime charged in their presence in British

Columbia on a given date. Manifestly testimony tending to show that the appellee was not in British Columbia on that date would necessarily tend to contradict the testimony of these witnesses. And in our opinion, whatever the rule may be in other cases, a foreign government should not be required to produce testimony before a committing magistrate in this country to rebut testimony tending to show that the accused was in the city of Seattle or elsewhere at the time of the commission of the crime. It is at least questionable whether the mere exclusion of evidence can be inquired into in a proceeding of this kind. See cases cited above.

[7] It is lastly contended that a former order of discharge in a habeas corpus proceeding between the same parties is res adjudicata. The facts upon which this contention is based are as follows: There were two hearings of the same charge before two different committing magistrates. On the former the only testimony offered by the Canadian government consisted of the affidavits and documents certified or authenticated by the American consul at Victoria, and in the first habeas corpus proceeding the court below held that such certification was unauthorized and void. The appellee was then held for further proceedings under another warrant. On the second hearing before the committing magistrate, the Canadian government offered the same documentary evidence, and also oral testimony to which we have referred in an earlier part of this opinion.

In the second habeas corpus proceeding, the court below adhered to its former ruling that the documentary evidence was not properly authenticated, and further held that the mode of authentication prescribed by the statute was exclusive, and that oral testimony was not competent. Assuming, without deciding, that the first order of discharge was res adjudicata, it could only be so as to the case then before the court. On the second hearing, as already stated, further competent testimony was offered by the Canadian government, sufficient in itself to make out a prima facie case, regardless of the certification by the consular officer. From this statement it becomes at once apparent that the order in the first proceeding was not a bar to the second proceeding, based as it was on different testimony.

For the foregoing reasons, the order of discharge is erroneous, and the same is reversed, and the case is remanded to the court below, with instructions to quash the writ of habeas corpus and remand the prisoner to the custody whence he was taken.